J-A28009-23

2024 PA Super 28

COMMONWEALTH OF PENNSYLVANIA,     :    IN THE SUPERIOR COURT OF PENNSYLVANIA

       Appellant       :

       v.       :

       :    No. 2849 EDA 2022

JOHN M. SEARS

Appeal from the Order Entered October 5, 2022
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): MC-51-CR-0004486-2020

BEFORE:    OLSON, J., STABILE, J., and COLINS, J.[*]

OPINION BY OLSON, J.:              **FILED FEBRUARY 20, 2024**

The Commonwealth of Pennsylvania appeals from the order entered on October 5, 2022, which denied the Commonwealth's petition for a writ of *certiorari* to the Municipal Court of Philadelphia. In this appeal, the Commonwealth claims that the lower courts erred when they suppressed the results of a breathalyzer test, showing that the defendant, John M. Sears ("the Defendant"), had a blood alcohol content ("BAC") of 0.144 percent. We vacate and remand.

On February 16, 2020, the Defendant was arrested and charged with driving under the influence of alcohol ("DUI").[1] The Defendant then filed, in

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S.A. § 3802(a)(1).

the Municipal Court of Philadelphia, a motion to suppress the results of a breathalyzer test. According to the Defendant, the results of the breathalyzer test must be suppressed, as they were the fruit of an illegal arrest. *See* Municipal Court Opinion, 8/31/22, at 1.

The municipal court held a suppression hearing on May 5, 2022. During the hearing, Philadelphia Police Officer Jonathan Carrero testified that, at approximately 6:55 p.m. on February 16, 2022, he was on duty and driving his police vehicle when he noticed the aftermath of a two-vehicle accident, with "a vehicle flipped over" on the road. N.T. Suppression Hearing, 5/5/22, at 5. The overturned vehicle was smoking. *Id.* at 10. Officer Carrero testified that he activated his lights, pulled around to the scene, and got out of his vehicle. At this point, Officer Carrero observed the Defendant trapped in the overturned vehicle and attempting to get out of the car. *Id.* at 6-7. The officer also observed that the Defendant's vehicle "had front damage." *Id.* at 10.

Officer Carrero testified that, after the Defendant was extracted from the overturned vehicle, the officer was able to attend to the other driver involved in the accident. He testified that the second driver "was screaming at the time saying she was struck by a car." *Id.* at 9 The officer testified that this second driver was operating a silver Mercedes-Benz and he noticed that her vehicle appeared to have been "struck on the driver's side, the rear." *Id.*

- 2 -

Officer Carrero also testified that, on the night of the accident, the weather was cold and clear, with no ice on the roads. *Id.* at 10.[2]

Philadelphia Police Lieutenant Marc Rutizer next testified at the hearing. At the time of the hearing, Lieutenant Rutizer was a 31-year veteran of the Philadelphia Police force and had made between 25 to 50 DUI arrests during his career. *Id.* at 16-17. He testified:

> Upon my arrival, I observed bystanders and Officer Carrero pulling [the Defendant] out of the vehicle that was flipped over. . . . [W]hen the bystanders and Officer Carrero had pulled him out, [the Defendant] identified himself as the driver. He informed me, when I asked him what occurred, he informed me that a vehicle had hit him from behind.
>
> At that point I observed, and I smelled, a moderate odor of alcohol emanating from his breath in addition to his eyes. He had staring eyes, and he continued to try and not look in my direction.

*Id.* at 14-15.

Lieutenant Rutizer testified that, during this conversation, the Defendant "told me he had got into an argument with his spouse, and . . . he had had four beers and he had had a couple shots." *Id.* at 16. Further, Lieutenant

---

[2] Contrary to the representation made by the Defendant in his brief, Officer Carrero did not testify that the Defendant "did not have a smell of alcohol on his person." Appellees Brief at 4. Instead, on cross-examination, when asked whether he smelled alcohol on the Defendant, Officer Carrero testified: "I didn't smell anything at the time. All I could smell was the car burning." N.T. Suppression Hearing, 5/5/22, at 11.

- 3 -

Rutizer testified that, after observing the Defendant, he arrived at the opinion that the Defendant "could not safely operate a motor vehicle."[3]  *Id.* at 17-18.

The testimony of record also demonstrated that, after Lieutenant Rutizer concluded the Defendant was driving his vehicle under the influence of alcohol, the Defendant was handcuffed, placed in the lieutenant's vehicle, and transported to "the Police Detention Unit for further processing."[4]  *Id.* at 18-19 and 36.  There, the Defendant was given a breathalyzer test, which showed that the Defendant had a BAC of 0.144 percent.  *See* Arrest Report, 2/17/20, at 1.

At the conclusion of the hearing, the municipal court granted the Defendant's motion to suppress the results of his breathalyzer test as the fruit of an illegal arrest.  *Id.* at 52.  In arriving at this conclusion, the municipal court explained:

> Considering the totality of the circumstances, there was not probable cause to arrest the Defendant for DUI.  Officer Carrero testified that while he interacted with the Defendant, he did not smell alcohol.  Sergeant [Kristin] Aversa testified that she performed a head-to-toe search of the Defendant, and Lieutenant Rutizer said to her "I think he's DUI."  At no point during the testimony does Sergeant Aversa state that

---

[3] During cross-examination, Lieutenant Rutizer testified that the Defendant's balance and speech were "normal" and that the Defendant was "very polite." N.T. Suppression Hearing, 5/5/22, at 22.  Further, Lieutenant Rutizer testified that he does not have "any formal training" in DUI recognition and enforcement.  *See id.*

[4] We note that Philadelphia Police Sergeant Kristin Aversa also testified during the suppression hearing.  *See* N.T. Suppression Hearing, 5/5/22, at 30-48.

she corroborated Lieutenant Rutizer's observations. While Lieutenant Rutizer testified that the Defendant stated that he had gotten into an argument with his spouse, and that he had four beers and a couple of shots, the Lieutenant also said that the Defendant's balance was normal, his speech was normal, and he was cooperative to the point of being described as "very polite." Lieutenant Rutizer also testified that in his 31 years as a part of the Philadelphia Police Department he has never received any formal DUI training and did not perform any field sobriety tests on the Defendant.

Municipal Court Opinion, 8/31/22, at 3.

On June 4, 2022, the Commonwealth filed, in the Court of Common Pleas of Philadelphia County, a petition for a writ of *certiorari* to the Municipal Court of Philadelphia. Commonwealth's Petition for Writ of *Certiorari*, 6/4/22, at 1. The court of common pleas denied *certiorari* on October 5, 2022. Trial Court Order, 10/5/22, at 1.

The Commonwealth filed a timely notice of appeal and, within its notice, the Commonwealth properly certified that the trial court's order "will terminate or substantially handicap the prosecution." Commonwealth's Notice of Appeal, 11/3/22, at 1; **see also** Pa.R.Crim.P. 311(d). The Commonwealth raises one claim to this Court:

> Did the lower court err by finding that officers lacked probable cause to arrest [the Defendant] where [the Defendant] caused a serious vehicular accident in which his car flipped over, a seasoned officer with 31 years of experience could smell alcohol on [the Defendant's] breath and believed he was intoxicated, and [the Defendant] freely admitted to drinking at least six alcoholic beverages following an argument with his spouse?

Commonwealth's Brief at 4.

- 5 -

"Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. Wallace*, 42 A.3d 1040, 1047–1048 (Pa. Super. 2012) (*en banc*); *see also* Pa.R.Crim.P. 581(H). If the defendant prevails in the underlying proceeding, "[w]e review a trial court's order suppressing evidence for an abuse of discretion and our scope of review consists of only the evidence from the defendant's witnesses [during the suppression hearing,] along with the Commonwealth's evidence that remains uncontroverted." *Commonwealth v. Miller*, 186 A.3d 448, 450 (Pa. Super. 2018) (quotation marks and citations omitted). "Where the [trial] court's factual findings are supported by the record, we are bound by these findings and may reverse only if the [trial] court's legal conclusions are erroneous." *Commonwealth v. Palmer*, 145 A.3d 170, 173 (Pa. Super. 2016) (quotation marks and citations omitted). Relatedly, "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa. Super. 2006) (quotation marks and citations omitted). However, "we maintain *de novo* review over the suppression court's legal conclusions." *Commonwealth v. Korn*, 139 A.3d 249, 253 (Pa. Super. 2016) (quotation marks and citations omitted).

We further note that when a party "files a petition for a writ of *certiorari*, the Philadelphia Court of Common Pleas sits as an appellate court."

*Commonwealth v. Coleman*, 19 A.3d 1111, 1119 (Pa. Super. 2011). "[A] petition for writ of *certiorari* asks the Common Pleas Court to review the record made in the Municipal Court." *Commonwealth v. Menezes*, 871 A.2d 204, 206 n.2 (Pa. Super. 2005). "*Certiorari* provides a narrow scope of review in a summary criminal matter and allows review solely for questions of law." *Commonwealth v. Miller*, 269 A.3d 596, (Pa. Super. 2022) (brackets, quotation marks, and citations omitted).

On appeal, the Commonwealth claims that the lower courts erred when they determined that the police did not have probable cause to arrest the Defendant and, in following, when they suppressed the results of the Defendant's breathalyzer test. We agree with the Commonwealth.

"To be lawful, an arrest must be supported by probable cause to believe that a crime has been committed by the person who is to be arrested." *Commonwealth v. Wells*, 916 A.2d 1192, 1195 (Pa. Super. 2007). "Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Commonwealth v. Bruno*, 154 A.3d 764, 781 (Pa. 2017) (quotation marks and citations omitted). "The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a *prima facie* showing, of criminal activity." *Id.* (quotation marks and citations omitted). "Whether probable cause exists

is a highly fact-sensitive inquiry that must be based on the totality of the circumstances as viewed through the eyes of a prudent, reasonable, cautious police officer guided by experience and training." **Wells**, 916 A.2d at 1195.

In the case at bar, the lower courts concluded that the Defendant was arrested when he was handcuffed and placed in the back of Lieutenant Rutizer's police vehicle. **See** Municipal Court Opinion, 8/31/22, at 2-3; Trial Court Opinion, 5/22/23, at 6. Therefore, we must view "the evidence from the defendant's witnesses [during the suppression hearing,] along with the Commonwealth's evidence that remains uncontroverted" and determine whether, at the time the Defendant was handcuffed and placed in the back of Lieutenant Rutizer's vehicle, the totality of the circumstances established probable cause to arrest the Defendant. **Miller**, 186 A.3d at 450.

As the municipal court found when it granted the Defendant's suppression motion, it is true that: the first officer on scene did not smell alcohol on the Defendant's breath; Sergeant Kristin Aversa did not corroborate Lieutenant Rutizer's observations that the Defendant was intoxicated; "the Defendant's balance was normal, his speech was normal, and he was . . . very polite;" Lieutenant Rutizer "never received any formal DUI training;" and, Lieutenant Rutizer "did not perform any field sobriety tests on the Defendant." **See** Municipal Court Opinion, 8/31/22, at 3.

The municipal court's factual findings are supported by the record and the preceding paragraph lists a number of factors that indeed militate against a finding of probable cause. Nevertheless, in granting the Defendant's

- 8 -

suppression motion, it appears as though the lower courts focused upon the above-stated factors to the exclusion of the "whole picture." ***See District of Columbia v. Wesby***, 583 U.S. 48, 60-61 (2018) (holding:  "[t]he 'totality of the circumstances' requires courts to consider the whole picture" and a court errs if it views "each fact in isolation, rather than as a factor in the totality of the circumstances") (quotation marks and citations omitted).  To be sure, the municipal court's factual findings and the uncontroverted evidence in this case also demonstrate the following:  1) the Defendant was involved in a two-vehicle accident, where the Defendant's vehicle suffered front-end vehicle damage and the second vehicle suffered rear-end damage; 2) the driver of the second vehicle informed the police that she "was struck by a car" – which is a statement that is consistent with the location of the damage on the vehicles; 3) the Defendant told the police that "a vehicle had hit him from behind" – which is a statement that is not consistent with the location of the damage on the vehicles; 4) on the night of the accident, the weather was clear, with no ice on the roads; 5) the Defendant admitted that he drank six alcoholic beverages prior to the accident; 6) Lieutenant Rutizer, a 31-year Philadelphia Police Department veteran, smelled "a moderate odor of alcohol emanating from [the Defendant's] breath," noticed that the Defendant had "staring" eyes, and observed that the Defendant attempted to "not look in [the lieutenant's] direction" when they spoke; and, 7) after interacting with the Defendant, Lieutenant Rutizer concluded that the Defendant was driving his vehicle under the influence of alcohol.

We conclude that, when all facts of this case are viewed in the aggregate, they are sufficient to establish probable cause to arrest the Defendant for DUI. Indeed, when the facts of this case are viewed in the aggregate and through the "eyes of a prudent, reasonable, cautious police officer guided by experience and training," the facts warrant the conclusion that the Defendant drank at least six alcoholic beverages, became visibly intoxicated, crashed his car into another person's vehicle, and, when speaking to the police, acted in an evasive manner and misrepresented what occurred during the accident. ***See supra*** at **8-9 (listing factors that favor a finding of probable cause in the case at bar); ***see also*** 2 Wayne R. LaFave, SEARCH AND SEIZURE § 3.6(f), at 327-328 (1996) ("responses by the suspect the officer knows to be false, or which are incriminating, implausible, conflicting, evasive or unresponsive may well constitute probable cause when considered together with the prior suspicions") (footnotes omitted); ***Commonwealth v. Salter***, 121 A.3d 987, 997 (Pa. Super. 2015) ("failing [field sobriety] tests is not a requirement for a determination of probable cause").

The totality of the circumstances in this case are thus sufficient to establish probable cause to arrest the Defendant for DUI, as the circumstances are sufficient to "warrant a prudent person to believe that [the Defendant had] been driving under the influence of alcohol or a controlled substance." ***Commonwealth v. Hilliar***, 943 A.2d 984, 994 (Pa. Super. 2008) (quotation marks and citations omitted); ***see also Commonwealth v. Slonaker***, 795 A.2d 397, 402 (Pa. Super. 2002) (the police possessed probable cause to

arrest the defendant for DUI because the defendant "drove erratically for an extended period of time, smelled of alcohol, and had bloodshot, glassy eyes"); **Commonwealth v. Dommel**, 885 A.2d 998, 1002-1003 (Pa. Super. 2005) (the police had probable cause to arrest the defendant for DUI, where the accident victim reported that the defendant "broadsided the victim's moving vehicle without stopping, drove through four more red lights at moderate speed, and eventually parked his pickup truck partially behind a residence in an apparent attempt to hide the truck from view;" moreover, when the police arrived at the defendant's residence with a show of force, the defendant "neither stopped nor ran away; instead, he just continued to walk into his home and left the door standing wide open behind him"); **Commonwealth v. Peters**, 915 A.2d 1213, 1219-1221 (Pa. Super. 2007) (probable cause existed to support the defendant's arrest where: the defendant crashed his truck into a telephone pole and drove off; when questioned by the police, the police observed that the defendant "had bloodshot, glassy eyes, and emitted a strong odor of alcohol;" the defendant admitted to the officer that he "drank five beers before the accident;" and, the defendant gave the officer "a far-fetched account [of the accident, declaring that he] swerv[ed] his vehicle to miss a dog that was chasing a bunny"); **Commonwealth v. Simmen**, 58 A.3d 811, 817-181 (Pa. Super. 2012) (concluding that the officer had probable cause to arrest the defendant for DUI because: "[the defendant] was involved in a hit-and-run accident in which he hit a retaining wall, a stairway railing, and a mailbox at approximately 1:00 in the morning[; the defendant] was

unable to control his vehicle to avoid an accident that occurred on a dry night with no adverse weather conditions[; d]espite being the sole cause of the accident, [the defendant] did not notify the homeowner of the accident, but drove away, leaving his front bumper in the homeowner's yard[; the defendant] admitted drinking alcohol earlier that evening and stated that he left the scene of the accident because he felt his vehicle was 'drivable'[; and, when the officer arrived at the defendant's] residence, he noted that [the defendant's] eyes were bloodshot and he smelled of alcohol") (citations omitted).

We thus conclude that the trial court erred when it denied the Commonwealth's petition for a writ of *certiorari* and when it affirmed the municipal court's suppression order.

Order vacated. Case remanded for further proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/20/2024

- 12 -