J-A05031-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JESUS CORREA | : | |
| | : | |
| Appellant | : | No. 1492 EDA 2025 |

Appeal from the Judgment of Sentence Entered August 28, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004360-2022

BEFORE:  KUNSELMAN, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                    **FILED JUNE 25, 2026**

Jesus Correa ("Correa") appeals from the judgment of sentence following his non-jury convictions for possession with intent to deliver ("PWID") and knowing or intentional possession of a controlled substance ("K&I").[1]  Because his claims are meritless, we affirm.

The facts and procedural history are as follows:  On February 14, 2022, Sergeant Connor Dooley ("Sergeant Dooley") and his partner, Officer Fuentes,[2] were on duty in the Kensington section of Philadelphia, when they stopped a car with a stolen license plate in which Correa was a passenger.

_____

[1] **See** 35 P.S. §§ 780-113(a)(30), (a)(16).

[2] The certified record does not contain Officer Fuentes's first name.

*See* N.T., 1/10/24, at 6-9.[3]  Officer Fuentes approached the driver.  Sergeant Dooley approached the passenger side of the car and began to ask Correa standard questions, including, "[Are] there any weapons in the vehicle— firearms specifically?  [Are] there any narcotics or any contraband in the vehicle?" *Id*. at 9.  Sergeant Dooley testified Correa, who remained on a cell phone call during their interaction, did not give a verbal response to these questions but looked away, slightly nodded, and shook his head, indicating the answer "no." *See id*. at 9, 17.  After Sergeant Dooley asked his questions, Correa stated he had just come from a bail bondsman where he had paid a bond for an open gun possession case.  *See id*.  Meanwhile, the driver of the car revealed to Officer Fuentes that he did not have any paperwork identifying him as the owner or permitted user of the car; in light of this the officers removed Correa and the driver from the car.  *See id*. at 10

Based on Correa's response indicating his open firearms charge, Correa's action of pressing his body against the car as he stepped out, and Sergeant Dooley's plan to place Correa in the back of the police vehicle during an investigative detention, Sergeant Dooley conducted a *Terry* frisk on Correa.  *See id*. at 10.  The frisk revealed what Sergeant Dooley immediately recognized to be a narcotics package in Correa's front waistband area.  *See id*. at 11.  The officers recovered from Correa's front waistband 96 packages

---

[3] Sergeant Dooley and his partner were on patrol as part of a task force investigating illegal narcotics activity and violent crimes.  *See* N.T., 1/10/24, at 8.

with blue insert stamps labeled "Red Lobster," containing 3.9 grams of fentanyl. *See id*. at 12-14.

Correa filed a motion to suppress. The suppression court held a hearing and denied the motion. *See id*. at 35. That same day, Correa waived his right to a jury trial and the trial court convicted him of the above-listed offenses. *See id*. at 37-46. The court imposed a sentence of one to two years of imprisonment, followed by one to two years of probation. Correa appealed and he and the trial court complied with Pa.R.A.P. 1925.

Correa raises the following issues for our review:

1. Whether the lower court erroneously denied suppression, where police obtained evidence pursuant to a warrantless pat-down search without reasonable suspicion that [] Correa was armed and dangerous?

2. Whether the lower court erroneously denied suppression by concluding police obtained the evidence during a search incident to [] Correa's arrest, where there was no probable cause for an arrest?

Correa's Brief at 3-4.

In his first issue, Correa asserts the police lacked reasonable suspicion he was armed and dangerous that would permit a pat-down.

This Court's standard of review regarding a challenge to a suppression ruling is limited to determining whether the suppression court's findings of fact are supported by the record and the legal conclusions drawn from those facts are correct. *See Commonwealth v. Thomas*, 273 A.3d 1190, 1195 (Pa. Super. 2022). Where the Commonwealth has prevailed below, this Court

may only consider the evidence of the prosecution and so much of the defense evidence as remains uncontradicted when read in the context of the record as a whole. *See id*. It is the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to give their testimony. *See id*. When the record supports the suppression court's factual findings, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions from those facts. *See Commonwealth v. Williams*, 941 A.2d 14, 27 (Pa. Super. 2008) (*en banc*).

This Court's scope of review is limited to the evidentiary record at the suppression hearing. *See Commonwealth v. Smith*, 302 A.3d 123, 126 (Pa. Super. 2023). When an appellant asserts legal error in a suppression court's ruling, it is the Court's duty to determine if the suppression court properly applied the law to the facts. *See Commonwealth v. Byrd*, 235 A.3d 311, 319 (Pa. 2020) (stating a suppression court's conclusions and legal rulings are subject to *de novo* review).

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect private citizens from unreasonable searches and seizures by government officials. *See Commonwealth v. Strickler*, 757 A.2d 884, 888 (Pa. 2000) (citing *United States v. Mendenhall*, 446 U.S. 544, 551 (1980)). "A warrantless search or seizure is presumptively unreasonable under the Fourth Amendment and Article I, § 8, subject to a few specifically established, well-delineated

exceptions." ***Commonwealth v. Smith***, 285 A.3d 328, 332 (Pa. Super. 2022) (citation omitted). One of those exceptions permits the police to conduct a stop and frisk when circumstances warrant. ***See Commonwealth v. Simonson***, 148 A.3d 792, 797 (Pa. Super. 2016).

Not every encounter between a law enforcement officer and a citizen constitutes a seizure warranting constitutional protection. ***See Commonwealth v. Adams***, 205 A.3d 1195, 1199 (Pa. 2019). As our Supreme Court has explained there are three types of encounters between police and a citizen and the nature of the encounter determines the nature of constitutional protection, if any:

> We have long recognized three types of interactions that occur between law enforcement and private citizens. The first is a mere encounter, sometimes referred to as a consensual encounter, which does not require the officer to have any suspicion that the citizen is or has been engaged in criminal activity. This interaction also does not compel the citizen to stop or respond to the officer. A mere encounter does not constitute a seizure, as the citizen is free to choose whether to engage with the officer and comply with any requests made or, conversely, to ignore the officer and continue on his or her way. The second type of interaction, an investigative detention, is a temporary detention of a citizen. This interaction constitutes a seizure of a person, and to be constitutionally valid police must have a reasonable suspicion that criminal activity is afoot. The third, a custodial detention, is the functional equivalent of an arrest and must be supported by probable cause. A custodial detention also constitutes a seizure.

> No bright lines separate these types of encounters, but the United States Supreme Court has established an objective test by which courts may ascertain whether a seizure has occurred to elevate the interaction beyond a mere encounter. The test, often referred to as the "free to leave test," requires the court to determine "whether, taking into account all of the circumstances

- 5 -

surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." Whenever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person.

*Id*. 1199-2000 (internal citations, some quotations, and brackets omitted).

When police command a suspect to stop, an investigative detention occurs, otherwise known as a ***Terry*** stop. ***See Commonwealth v. Jackson***, 271 A.3d 461, 464 (Pa. Super. 2021); ***see also Terry v. Ohio***, 392 U.S. 1 (1968); ***Adams***, 205 A.3d at 1200. Two conditions must be present for police to frisk a suspect during a ***Terry*** stop: "First, the investigatory stop must be lawful." ***Interest of T.W.***, 261 A.3d 409, 417 (Pa. 2021) (citation omitted). An investigatory stop of a car is lawful where an officer has probable cause to believe the vehicle is not in compliance with the Motor Vehicle Code and stops the car on that basis. ***See Commonwealth v. Malloy***, 257 A.3d 142, 148 (Pa. Super. 2021). "Second, to proceed from a stop to a frisk, the police officer must reasonably suspect that the person is armed and dangerous." ***T.W.***, 261 A.3d at 417 (quoting ***Arizona v. Johnson***, 555 U.S. 323, 326-27 (2009)).

"A reasonable suspicion analysis considers the totality of the circumstances." ***Commonwealth v. Stoney***, 347 A.3d 671, 678 (Pa. Super. 2025). "[A]n investigative detention is constitutionally permissible if an officer identifies 'specific and articulable facts' that led the officer to believe that criminal activity was afoot, considered in light of the officer's training and

experience." **Adams**, 205 A.3d at 1205 (citations omitted). The reasonable suspicion test is not limited to consideration of only those facts that clearly indicate criminal conduct. **See Commonwealth v. Rogers**, 849 A.2d 1185, 1189 (Pa. 2004). "Rather, [e]ven a combination of innocent facts, when taken together, may warrant further investigation by the police officer." **Id**. (citations omitted).

In **Minnesota v. Dickerson**, 508 U.S. 366 (1993), the United States Supreme Court held that "police officers may seize contraband detected during a lawful frisk if the identity of the illegal contraband is 'immediately apparent' upon touching the object." **T.W.**, 261 A.3d at 420 (citing **Dickerson**, 508 U.S. at 375).

Correa asserts police frisked him without reasonable suspicion he was armed and dangerous. He states he was cooperative with the officers and disagrees with Sergeant Dooley's testimony he declined to respond verbally and was on the phone during the encounter. **See** Correa's Brief at 21-22. Next, Correa argues there is no body camera footage of him pressing his body against the car, and even if there was, that conduct occurred **after** he was asked to step out of the vehicle and put his hands on the car. **See id**. at 23.[4] Finally, Correa argues Sergeant Dooley did not develop reasonable suspicion

---

[4] Correa also argues that Sergeant Dooley created the need to pat down Correa by placing him in the back of the police cruiser.

upon learning about Correa's open firearms case because Correa volunteered this information to the officers, "which is the opposite of suspicious behavior." *See id*. at 26. The legitimacy of the vehicle stop is uncontested.

At the hearing, the suppression court stated that once the officers decided to put Correa in the police car, the officers had a right to make sure Correa was unarmed and to perform a safety frisk before placing him in the patrol car. *See* N.T., 1/10/24, at 34-35.

In its 1925(a) opinion, the suppression court stated reasonable suspicion Correa was involved in criminal activity existed because Correa was in a stolen car in a high-crime area where police officers were investigating illegal narcotics activity and violent crimes. *See* Trial Court Opinion, 6/18/25, at 6; N.T., 1/10/24, at 8 (Sergeant Dooley testifying Kensington and the greater North Philadelphia area is "a very high narcotics trade and violent crimes . . . area."). The court further explained reasonable suspicion Correa was armed and dangerous existed based on Sergeant Dooley's credible testimony. *See* Trial Court Opinion, 6/18/25, at 8.

The trial court did not err by finding Sergeant Dooley had reasonable suspicion Correa was armed and dangerous, permitting a *Terry* frisk. Correa was a passenger in a stolen vehicle, and neither he nor the driver could produce registration. Seemingly in response to the questions about whether he was armed or had narcotics on him or in the car, Correa volunteered the fact he was returning from seeing a bail bondsman for an open firearms

charge. *See* N.T., 1/10/24, at 17. Although Correa characterizes his statement as "the opposite of suspicious behavior," *see* Correa's Brief at 26, the existence of the firearm charge against him created a reasonable belief he might be armed.[5] *See In re O.J.*, 958 A.2d 561, 564 (Pa. Super. 2008) (*en banc*) (citation omitted) (emphasis added) (explaining "roadside encounters[] between police and suspects are especially hazardous, and that danger may arise from the *possible* presence of weapons in the area surrounding a suspect."). Further, the interaction occurred in a high crime area, another factor supporting the existence of reasonable suspicion; in fact, a police officer's observations of a defendant's conduct in a high crime area can contribute to a finding not only of reasonable suspicion but of probable cause, which requires a higher quantum of suspicion. *See Commonwealth v. Joseph*, 34 A.3d 855, 863-64 (Pa. Super. 2011). Here, the officers knew Correa was in a stolen vehicle, was on bail on a firearms charge, and the interaction occurred in a high crime area. Considering the totality of the circumstances, Sergeant Dooley had reasonable suspicion Correa may be armed and dangerous, permitting a *Terry* frisk.[6] *See In re D.M.*, 781 A.2d

_____

[5] Moreover, Correa may have chosen to reveal the gun charge knowing the officer would discover it independently through a search on a computer in the squad car.

[6] Correa cites *Commonwealth v. Miller*, 333 A.3d 470 (Pa. Super. 2025), to support the proposition that Sergeant Dooley failed to articulate specific facts from which he inferred Correa was armed and dangerous. *See* Correa's Brief

*(Footnote Continued Next Page)*

1161, 1163-64 (Pa. 2001) (citations omitted) (explaining while presence in a high crime area alone does not establish reasonable suspicion, "the fact that [a] stop occurred in a 'high crime area'" can be a factor establishing reasonable suspicion for a stop and frisk).[7]

_____

at 18-20. **Miller**, however, involved an appellant who was frisked on suspicion of drug activity alone. **See Miller**, 333 A.3d at 474. Correa's reliance on **Commonwealth v. Kent**, 2025 WL 2159081 (Pa. Super. 2025) (unpublished memorandum) is similarly misplaced; in that case, officers frisked Kent solely because the car in which he was a passenger was in a "try-and-locate" status. **See Kent**, 2025 WL 2159081 at *1. Neither **Miller** nor **Kent** involved a stolen car nor a passenger's admission to an open firearms charge. Thus, those cases are inapposite.

Additionally, Correa cites **Commonwealth v. Barr**, 266 A.3d 25 (Pa. 2021), to argue the area's crime rate should have no relevance towards a reasonable suspicion analysis. However, **Barr** discusses the importance of a "high crime" area in the context of an analysis of the existence of **probable cause** to conduct a warrantless car search; it determines the police lacked probable cause to search a car without a warrant based solely on a vehicle stop and the smell of marijuana. **See id**. at 44. Thus, **Barr** does not apply here.

Finally, Correa conflates the consideration of prior arrests in **sentencing** with the consideration of prior arrests in a reasonable suspicion analysis. Correa cites **Commonwealth v. Berry**, 323 A.3d 641 (Pa. 2024), to support his proposition that a previous arrest "ultimately means nothing." **See** Correa's Brief at 27 (citing **Berry**, 323 A.3d at 654). However, **Berry** did not concern the relevance of prior arrests to an officer in the field assessing reasonable suspicion; it held that a **sentencing court** cannot consider prior arrests. **See Berry**, 323 A.3d at 655. In the context of assessing reasonable suspicion, relevant, recent case law from the Pennsylvania Supreme Court agrees a suspect's presence in a high crime area is relevant to assessing reasonable suspicion. **See Commonwealth v. Lewis**, 343 A.3d 1016, 1029 (Pa. 2025).

[7] Because the police had reasonable suspicion to perform a **Terry** frisk, we do not address the suppression court's assertion of the right to conduct a "safety"
*(Footnote Continued Next Page)*

In his second and final issue, Correa asserts that the search incident to arrest exception to the warrant requirement cannot apply because he was arrested without probable cause. In other words, because his arrest was not valid, the search incident to arrest exception did not apply.

As this Court has explained, probable cause exists:

> when the facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a *prima facie* showing, of criminal activity. Whether probable cause exists is a highly fact-sensitive inquiry that must be based on the totality of the circumstances as viewed through the eyes of a prudent, reasonable, cautious police officer guided by experience and training.

*Commonwealth v. Sears*, 311 A.3d 34, 39 (Pa. Super. 2024) (internal citations and quotation marks omitted).

Correa argues the fact the car had stolen plates was insufficient to arrest him because he was merely a passenger in the car. *See* Correa's Brief at 31.

We do not reach the question of whether there was probable cause to arrest Correa prior to Sergeant Dooley finding the narcotics. Because the stop and frisk were valid pursuant to *Terry*, the existence of another exception to the warrant requirement is irrelevant. *See Simonson*, 148 A.3d at 797

_____

frisk, outside of the confines of *Terry* or any other exception to the warrant requirement.

- 11 -

(listing the several exceptions, including stop and frisk and search incident to arrest).[8]  Therefore, given our disposition of Correa's first claim, this claim could not provide a basis for relief.

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/25/2026

_____

[8] In the event that Correa contests probable cause to arrest him **after** Sergeant Dooley found the fentanyl, his claim is meritless.  Sergeant Dooley had years of experience and has recovered narcotics over one hundred times.  **See** N.T. 1/20/24, at 7, 11.  Sergeant Dooley testified that, upon patting down Correa, he immediately recognized the rectangular packages as a typical way in which heroin is packaged.  **See id**. at 11-12, 18.  Thus, through the eyes of Sergeant Dooley, guided by his ample experience and training, there was probable cause to arrest Correa for narcotics-related charges.  **See Sears**, 311 A.3d at 39.